UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIEGO A. MUNIZ,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 10-6423 AGR<br><br><br>**MEMORANDUM OPINION AND ORDER** |

　　　　Diego A. Muniz filed this action on September 3, 2010.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on October 7, and 15, 2010.  (Dkt. Nos. 10, 11.)  On June 2, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

　　　　Having reviewed the entire file, the court affirms the decision of the Commissioner.

///

///

///

///

# I.

## PROCEDURAL BACKGROUND

Muniz received child's disability benefits. Administrative Record ("AR") 150-55, 207-10. After Muniz turned 18 years old, the Social Security Administration reevaluated his eligibility for disability benefits as an adult and determined he was not eligible. Muniz received benefits until March 31, 2006. AR 144-47. Upon reconsideration, he was again found ineligible. AR 123-39. Muniz requested a hearing before an Administrative Law Judge ("ALJ"). AR 119. After Muniz failed to appear for his hearing, the ALJ issued an order of dismissal. AR 87-88. Muniz requested Appeals Council review of the dismissal and alleged he never received notice of the hearing. AR 81. On July 2, 2009, the Appeals Council granted the request for review and remanded the case to the ALJ. AR 68-71.

On January 27, 2010, the ALJ conducted a hearing at which Muniz, a medical expert and a vocational expert testified. AR 570-608. On April 22, 2010, the ALJ issued a decision denying benefits. AR 8-18. On July 16, 2010, the Appeals Council denied Muniz's request for review. AR 3-5. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In

determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

### III.
### DISCUSSION

#### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

#### B. The ALJ's Findings

The ALJ found Muniz had the severe impairment of "clotting deficiency/hemophiliac condition." AR 13. Since March 31, 2006, Muniz had the residual functional capacity to perform light work except that "he can never climb ladders or scaffolds; he is to avoid working around unprotected heights, dangerous machinery, fast moving machinery, open pools of water, sharp hand tools, and working with tools over ten pounds." AR 14. Muniz has no past relevant work. AR 16. The ALJ found Muniz can perform jobs that exist in significant numbers in the national economy such as cashier II, office helper, and arcade attendant. AR 16-17. She concluded Muniz's disability ended on March 31, 2006 and he had not become disabled again since that date. AR 17.

#### C. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*

*v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (*quoting Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Muniz's medically determinable impairment could reasonably be expected to cause his symptoms. AR 16.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 957, 958-959 (9th Cir. 2002).

At the hearing, Muniz testified he was 22 years old. AR 573. He lived with a roommate and had been living away from his mother's home for 1-1/2 years. AR 575. He attended college full-time. AR 577-78. He had a driver's license and a car, which he drove. AR 577. He had never worked. AR 578.

Muniz testified that twice a month he gets internal bleeding in his joints and muscles, such as ankles, toes, knees, elbows, fingers, hips or upper thigh. AR

4

578-79, 590. Sometimes he does not know what triggers the bleeding, but sometimes it is because of the way he sleeps. Other times he guesses it is from walking, typing or writing too much. AR 579. These bleeds may last four days. AR 590. There is no other reason he cannot work. AR 579. When internal bleeding occurred, he treated himself with factor as needed. AR 581-83. He elevated the affected area and did not "do anything." AR 590. For example, if he has a bleed in his ankle, he does not drive. AR 591. His hematologist recently put him on prophylaxis, which means he now takes factor every other day. AR 582. He had never received a blood transfusion. AR 585. He went to the emergency room twice in 2009 and maybe once or twice in 2008 for "bleeds." AR 584.

Muniz testified that when he does not have a bleed, he can sit for maybe 20 minutes, stand for 10 minutes, walk for maybe 10 minutes and lift or carry about a gallon of milk. AR 595-96. He never does housework, laundry, cooking or shopping, although he does accompany his roommate. AR 596-97.

The ALJ found that Muniz's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 16. The ALJ relied on three reasons: (1) lack of significant longitudinal medical records regarding his clotting deficiency/hemophiliac condition; (2) inconsistencies between Muniz's testimony and his daily activities, including his behavior at the hearing; and (3) lack of "regular usage of strong medication to alleviate pain that would significantly impair [his] ability to do work activities." AR 16.

Substantial evidence supports the ALJ's credibility finding. Although it is not sufficient alone to discount credibility, an ALJ may properly consider the objective medical record. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As noted by the ALJ, medical records indicate that Muniz last visited the

emergency room in 2001 except for a chest pain visit on November 14, 2009. AR 16, 568.[1] On March 6, 2006, Muniz reported pain in his right elbow and right wrist, and noted he had been writing a lot. AR 383. He noted one dose normally controls his symptoms. *Id.* On December 18, 2006, Muniz reported that he has had one elbow bleed per month for the past six or seven months. AR 564. Otherwise, he had not had any other significant bleeding problems. *Id.* The physician recommended that for the next three months he go on prophylaxis three times per week and increase the dose to reflect an increase in his weight.[2] *Id.* On October 1, 2007, Muniz reported "only minor bleeding problems which occur 1-2 times a month," the majority of which are in the right elbow but the last one was in the left foot.[3] AR 561. The physician noted Muniz was not compliant with his prophylaxis. *Id.* On May 7, 2009, Muniz reported having right elbow bleeds about every month, which he treats himself, and over the past year had a few episodes of right hip bleed, and "he believes that maybe his toes and fingers sporadically bleed, especially his fingers." AR 551. The physician stated Muniz "does admit to typing on the computer up to 8 to 10 hours a day as a programmer." *Id.* The physician again recommended that Muniz be on prophylaxis and that treatments on an as needed basis are not sufficient. AR 552. "This may be a result of the fact that he is a programmer and has repetitive motion injuries from sitting at the computer all day." *Id.* In addition, the physician stated he counseled Muniz that his significant increase in weight can cause

---

[1] The record also shows an emergency room visit on November 25, 2004, related to abdominal pain that was resolved by the time he was discharged. AR 476-504. The visit occurred long before the relevant time period. *See Burch*, 400 F.3d at 679) ("A decision of the ALJ will not be reversed for errors that are harmless").

[2] If that regimen did not work within three months, the physician would consider a radioisotopic synovectomy. AR 565. There is no indication that procedure ever occurred.

[3] The physician noted the left foot and ankle had full range of motion and no significant swelling. AR 562.

increased joint damage and bleeds and warrants an increased dosage. *Id.* There is no recommendation that Muniz give up programming. *Id.* The sporadic treatment records during the relevant time period, including Muniz's statements as reported by the physician, do not support the degree of Muniz's subjective complaints.

Substantial evidence supports the ALJ's finding that Muniz's testimony is inconsistent with his daily activities. As noted by the ALJ, Muniz testified he attended college full-time and drove a car. AR 16, 577-78. As discussed above, the ALJ also noted Muniz told his treating physician that he was a computer programmer and typed on the computer 8 to 10 hours a day. AR 15, 551. Although Muniz testified he could sit 20 minutes at a time, the ALJ observed Muniz sitting for over an hour at the hearing without difficulty. AR 16. *See Burch*, 400 F.3d at 680-81 ("Although the evidence of [the claimant's] daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and '[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'") (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).

The record shows Muniz used Tylenol Extra Strength for pain. AR 301. The ALJ properly considered Muniz's use over-the-counter medication for pain. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (reliance on over-the-counter pain medication may be used to discount credibility); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (describing anti-inflammatory medication as conservative treatment).

Muniz does not specifically address the reasons for the ALJ's credibility finding. Instead, Muniz argues that he should not engage in the repetitive activity of working as programmer, and the ALJ failed to give adequate reasons for rejecting that portion of Muniz's testimony. JS 6-7. Muniz, however, testified that the treating physician's report was not correct. AR 598. His work as a computer

programmer 8-10 hours per day did not involve 10 hours of constant typing. "It's more, you know, you look at the screen or you're looking at a book." *Id.* There is no reason for the ALJ to discount this particular testimony. Moreover, the treating physician who thought Muniz was typing up to 8 to 10 hours a day did not recommend that he stop doing so. AR 552.

The ALJ did not err. *See Thomas*, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing").

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: August 31, 2011

_____
ALICIA G. ROSENBERG
United States Magistrate Judge